Case 1:13-cv-00031-RJJ Doc #1 Filed 01/10/13 Page 1 of 13 Page ID#1

FILED - GR
January 10, 2013 3:52 PM
TRACEY CORDES, CLERK
U S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _anm /_____ Scanned AM/ 1-10

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| INFRASTRUCTURE ALTERNATIVES, INC.; WILLIAM J. CRETENS; and DANA TRIERWEILER, | Case No. 13-_____<br><br>Honorable | 1:13-cv-31<br>Robert J. Jonker<br>U.S. District Judge |
| Plaintiffs, | **COMPLAINT** | |
| v | | |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services; **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES**; **HILDA L. SOLIS**, Secretary of the United States Department of Labor; **UNITED STATES DEPARTMENT OF LABOR**; **TIMOTHY F. GEITHNER**, Secretary of the United States Department of the Treasury; and **UNITED STATES DEPARTMENT OF TREASURY**, | | |
| Defendants. | | |
| _____/ | | |

Douglas A. Donnell (P33187)
Mika Meyers Beckett & Jones PLC
Attorneys for Plaintiffs
900 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 632-8000
ddonnell@mmbjlaw.com
_____/

NOW COME Plaintiffs Infrastructure Alternatives, Inc. ("IAI"), William J. Cretens, and Dana Trierweiler (collectively "Plaintiffs"), by and through their attorneys, Mika Meyers Beckett & Jones PLC, and for their Complaint against the above-named Defendants, allege as follows:

{01324752 1 }

## NATURE OF THE ACTION

1. This action presents constitutional and statutory challenges to administrative regulations promulgated and implemented under the Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119, and Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (collectively the "Affordable Care Act"), specifically those regulations mandating that employers include in employee health benefit plans coverage of drugs and services that violate an employer's religious beliefs and values.

2. The Affordable Care Act mandates that health plans "shall, at a minimum provide coverage for and shall not impose any costs sharing requirements for[,] with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration," and directs the Department of Health and Human Services ("HHS") to determine what constitutes "preventive care" under the mandate. 42 U.S.C. § 300gg-13(a)(4).

3. Pursuant to its directive, HHS commissioned the Institute of Medicine ("IOM") to conduct a study and develop recommended guidelines regarding preventive care for women. On July 19, 2011, IOM published its recommendation that "preventive services" include all Food and Drug Administration ("FDA") approved contraceptive and sterilization methods and related counseling and education for all women with reproductive capacity. Institute of Medicine, Clinical Preventive Services for Women: Closing the Gaps (July 19, 2011).

4. Without meaningful notice of rulemaking or opportunity for public comment, the United States Departments of Labor, Treasury, and Health and Human Services adopted the IOM recommendations in full and issued an interim final rule that requires all group health plans and health insurance issuers offering group or individual health insurance coverage to provide all FDA-approved contraceptive and sterilization methods, as well as education and counseling for the same,

2

{01324752 1}

for all women with reproductive capacity. 45 C.F.R. § 147.130(a)(1)(iv); 76 Fed. Reg. 46621 (Aug. 3, 2011). The guidelines were later confirmed as a final rule (the "Mandate"). 77 Fed. Reg. 8725 (Feb. 15, 2012) (adopting and quoting the HRSA guidelines).

5. The Mandate requires all insurance issuers to provide coverage, without any cost-sharing requirements, not only for contraception, but also for abortifacients, such as the morning-after pill ("Plan B") and week-after pill ("Ella"), and sterilization methods approved by FDA.

6. Plan B and Ella are designed to prevent the implantation of a human embryo in the wall of the uterus and cause the death of an embryo. The use of artificial means to prevent the implantation of a human embryo in the wall of the uterus or to cause the death of an embryo each constitute an "abortion" as that term is used in federal law and Catholic teaching.

7. By virtue of their sincerely held religious convictions, Plaintiffs believe that each human is created in the image and likeness of God and must be protected from the moment of conception to the moment of natural death. Plaintiffs further believe that human sexuality is a gift from God designed to unite spouses in marriage and transmit human life. As a result of their religious beliefs, Plaintiffs cannot provide, facilitate access to, subsidize, or otherwise cooperate with the provision of drugs or services that facilitate contraception and sterilization, particularly abortifacients, because to do so would be cooperation with practices that Plaintiffs believe are gravely wrong and sinful.

8. Plaintiffs are compelled by their religious beliefs to provide their employees with health insurance benefits consistent with Plaintiffs' religious beliefs, in order to provide for the health and well being of Plaintiffs' employees. Accordingly, Plaintiffs believe that eliminating employee health benefits altogether would run afoul of Plaintiffs' religious convictions.

9. Plaintiffs are forced to either comply with the Mandate and violate their sincerely held religious beliefs, or not comply with the Mandate and face ruinous monetary fines and penalties. Plaintiffs therefore seek a declaration that the Mandate violates their constitutional and statutory rights and other federal law, as well as a permanent injunction enjoining Defendants from implementing and enforcing the Mandate against Plaintiffs, particularly those portions of the Mandate pertaining to any requirement to cover contraceptive methods and sterilization procedures, as well as related education and counseling.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1346 because this civil action is against agencies and officials of the United States based on claims arising under the United States Constitution, federal law, and regulations of executive departments.

11. This Court has jurisdiction to grant Plaintiffs the requested relief pursuant to 5 U.S.C. § 702; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 2000bb-1; and Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

12. Venue is proper under 28 U.S.C. § 1391(e) because this is the judicial district in which Plaintiffs reside.

13. This Court has authority to award Plaintiffs their costs and attorneys' fees under 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

## PLAINTIFFS

14. Plaintiff IAI is a Michigan for-profit corporation with its principal office located at 7888 Childsdale Avenue, Rockford, Michigan 49341.

{01324752 1}

15. Plaintiff William J. Cretens is an owner, President, and Chief Executive Officer of IAI. He has responsibility for setting policies governing the conduct of all phases of business of IAI, including decisions concerning insurance. He resides in the Western District of Michigan.

16. Plaintiff Dana Trierweiler is an owner and Executive Vice President of IAI. He resides in the Western District of Michigan.

17. Plaintiffs Cretens and Trierweiler together own approximately 87 percent of the outstanding stock and a controlling interest in IAI.

## DEFENDANTS

18. Defendants are officials of the United States government and United States governmental agencies responsible for administration and enforcement of the Mandate.

19. Defendant Kathleen Sebelius is Secretary of HHS and is named in her official capacity only.

20. Defendant HHS is an executive agency of the United States government and is responsible for administration and enforcement of the Mandate.

21. Defendant Hilda L. Solis is Secretary of the United States Department of Labor and is named in her official capacity only.

22. Defendant United States Department of Labor is an executive agency of the United States government and is responsible for administration and enforcement of the Mandate.

23. Defendant Timothy F. Geithner is Secretary of the United States Department of Treasury and is named in his official capacity only.

24. Defendant United States Department of Treasury is an executive agency of the United States government and is responsible for administration and enforcement of the Mandate.

{01324752 1 }

## GENERAL ALLEGATIONS

25. Plaintiffs Cretens and Trierweiler are adherents of the Catholic faith as defined by the Magisterium, the teaching authority of the Catholic Church, which prohibits Plaintiffs from participating in, paying for, facilitating, training others to engage in, or otherwise cooperating with the practice of contraception and sterilization, particularly abortifacients.

26. Plaintiffs Cretens and Trierweiler seek to manage and operate Plaintiff IAI in a manner that reflects the teachings, mission, and values of their Catholic faith.

27. Plaintiff IAI is a for-profit corporation that merely represents the business form through which the individual Plaintiffs endeavor to live their vocation as Christians in the world. Plaintiff IAI currently employs 70 full-time employees.

28. Plaintiff IAI purchases group health insurance coverage through an issuer, Blue Cross/Blue Shield of Michigan, and provides this insurance to its full-time employees.

29. Like other non-cash employee benefits provided by IAI, Plaintiffs consider the provision of employee health insurance an integral component of furthering the company's mission and values, consistent with the teachings of their Catholic faith. Plaintiffs further recognize that providing employee health insurance is a practical need insofar as Plaintiffs must attract skilled employees to remain competitive in the marketplace.

30. Plaintiffs desire to provide employee health insurance in a manner consistent with their religious beliefs. Near the end of 2012, Plaintiffs discovered that they — unknowingly and inadvertently — had been providing health coverage for drugs and services that violate Plaintiffs' sincerely held religious beliefs. Such coverage was in error and is contrary to Plaintiffs' desires based on their religious beliefs. However, Plaintiffs understand they can no longer obtain coverage

that is consistent with their religious beliefs without facing ruinous fines and penalties under the Affordable Care Act, which may total as much as $2,117,000.00, or more, for 2013.[1]

31. Due to the potential ruinous fines and penalties under the Mandate, Plaintiffs have been forced to comply with the Mandate against their religious beliefs.

## THE MANDATE

32. Under the Mandate, employers with more than 50 employees, including IAI, are required to include in group health plans coverage for all FDA-approved contraceptive methods (including abortifacients), sterilization, and related education and counseling.

33. The Mandate applies to the first health insurance plan year beginning on or after August 1, 2012.

34. Plaintiffs' current employee health insurance plan year began on January 1, 2013, and the Mandate applies to such plan.

35. Plaintiff IAI's current health insurance plan is not considered "grandfathered" because of unrelated plan changes that occurred after March 23, 2010. Furthermore, Plaintiffs' religious beliefs require that they eliminate coverage of objectionable drugs and services that Plaintiffs unknowingly had been providing, as discovered near the end of 2012, so the plan would not be considered "grandfathered" because of the changes required to provide a plan that complies with Plaintiffs' religious beliefs.

36. Plaintiff IAI, as a for-profit corporation, does not qualify as a "religious employer" under 45 C.F.R. § 147.130(a)(1)(iv)(A) and (B) and is not subject to any temporary "safe harbor" from enforcement of the Mandate, as set forth in 77 Fed. Reg. 8725 (Feb. 15, 2012).

---

[1] Plaintiffs' employee health insurance plan includes 58 plan participants, and potential fines and penalties for 2013 are believed to be calculated as $100 per day times 365 days per year times 58 plan participants, equals $2,117,000.00.

37. Plaintiffs are not otherwise exempt from the Mandate.

38. The Mandate strips Plaintiffs of the ability to provide employee health benefits in a manner consistent with Plaintiffs' sincerely held religious beliefs, and if Plaintiffs fail to comply with the Mandate, Plaintiffs will face ruinous monetary fines and penalties that will cripple their business. Indeed, Plaintiffs believe that such fines and penalties would financially destroy IAI.

39. Plaintiffs wish to conduct their business in a manner that does not violate the principles of their religious faith.

40. The Mandate coerces Plaintiffs to comply with its requirements and to abandon integral components of Plaintiffs' religious beliefs, mission, and values.

41. The Mandate is not neutral because some groups, both secular and religious, enjoy exemptions from the law, while other secular and religious groups do not. The Mandate is not generally applicable because it provides for numerous exemptions from its rules. By way of example, employers with fewer than 50 full-time employees (a seemingly arbitrary number) are exempt from the Mandate, as are "grandfathered" plans and numerous others.

42. Any alleged interest that Defendants have in providing, without any cost sharing, FDA-approved contraceptives, abortifacients, sterilization, and related counseling and education could be advanced by Defendants through other more narrowly tailored means that do not substantially burden the religious beliefs of Plaintiffs and do not require Plaintiffs to provide, facilitate access to, subsidize, or otherwise cooperate with the provision of objectionable drugs and services, particularly abortifacients.

43. Plaintiffs lack an adequate or available administrative remedy, or alternatively, any effort to obtain an administrative remedy would be futile.

8

{01324752 1}

## COUNT I
## VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT

44. Plaintiffs repeat and incorporate by reference all preceding paragraphs.

45. Plaintiffs' sincerely held religious beliefs prohibit them from providing, facilitating access to, subsidizing, or otherwise cooperating with health coverage for all FDA-approved contraceptive methods (particularly abortifacients), sterilization procedures, and patient education and counseling related to such procedures, as required by the Mandate. Plaintiffs' adherence to such beliefs is religious exercise.

46. The Mandate imposes a substantial burden on Plaintiffs' free exercise of religion by forcing Plaintiffs to choose between conducting their business in accordance with their religious beliefs and paying ruinous monetary fines and penalties, or complying with the Mandate and forsaking and violating their sincerely held religious beliefs.

47. The Mandate creates extreme government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs. The penalties authorized by the Affordable Care Act for non-compliance with the Mandate, if imposed, would financially destroy IAI.

48. The Mandate, particularly those portions of the Mandate pertaining to any requirement to cover contraceptive methods and sterilization procedures, as well as related education and counseling, furthers no compelling governmental interest.

49. The Mandate is not narrowly tailored to further any governmental interest.

50. The Mandate is not the least restrictive means of furthering Defendants' stated governmental interests.

51. The Mandate and Defendants' threatened enforcement of the Mandate violate Plaintiffs' rights secured by the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4.

9

{01324752 1}

52. Absent declaratory relief and a permanent injunction, Plaintiffs have been and will continue to be harmed by the Mandate and Defendants' threatened and/or actual enforcement of the Mandate.

## COUNT II
## VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT

53. Plaintiffs repeat and incorporate by reference all preceding paragraphs.

54. Plaintiffs' sincerely held religious beliefs prohibit them from providing, facilitating access to, subsidizing, or otherwise cooperating with health coverage for all FDA-approved contraceptive methods (particularly abortifacients), sterilization procedures, and patient education and counseling related to such procedures, as required by the Mandate. Plaintiffs' adherence to such beliefs is religious exercise.

55. The Mandate imposes a substantial burden on Plaintiffs' free exercise of religion by forcing Plaintiffs to choose between conducting their business in accordance with their religious beliefs and paying ruinous monetary fines and penalties, or complying with the Mandate and forsaking and violating their sincerely held religious beliefs.

56. The Mandate creates extreme government-imposed coercive pressure on Plaintiffs to change or violate their religious beliefs. The penalties authorized by the Affordable Care Act for non-compliance with the Mandate, if imposed, would financially destroy IAI.

57. The Mandate, particularly those portions of the Mandate pertaining to any requirement to cover contraceptive methods and sterilization procedures, as well as related education and counseling, furthers no compelling governmental interest.

58. The Mandate is not narrowly tailored to further any governmental interest.

59. The Mandate is not the least restrictive means of furthering Defendants' stated governmental interests.

60. The Mandate is neither neutral nor generally applicable.

61. The Mandate and Defendants' threatened enforcement of the Mandate violate Plaintiffs' rights to free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

62. Absent declaratory relief and a permanent injunction, Plaintiffs have been and will continue to be harmed by the Mandate and Defendants' threatened and/or actual enforcement of the Mandate.

## COUNT III
## VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT

63. Plaintiffs repeat and incorporate by reference all preceding paragraphs.

64. The First Amendment protects organizations as well as individuals from compelled speech.

65. Expenditures of money are a form of protected speech.

66. Plaintiffs believe and profess that the aforementioned drugs and services covered by the Mandate, particularly abortifacients, are contrary to their sincerely held religious beliefs.

67. The Mandate compels Plaintiffs to subsidize speech and activities that Plaintiffs believe are gravely sinful and immoral.

68. The Mandate compels Plaintiffs to provide, facilitate access to, subsidize, or otherwise cooperate with the provision of education and counseling regarding such objectionable drugs and services. In other words, the Mandate compels Plaintiffs to aid speech that directly conflicts with Plaintiffs' religious beliefs.

69. The Mandate, particularly those portions of the Mandate pertaining to any requirement to cover contraceptive methods and sterilization procedures, as well as related education and counseling, furthers no compelling governmental interest.

70. The Mandate is not narrowly tailored to further any governmental interest.

71. The Mandate is not the least restrictive means of furthering Defendants' stated governmental interests.

72. The Mandate is neither neutral nor generally applicable.

73. The Mandate and Defendants' threatened enforcement of the Mandate violate Plaintiffs' rights to free speech as guaranteed by the First Amendment to the United States Constitution.

74. Absent declaratory relief and a permanent injunction, Plaintiffs have been and will continue to be harmed by the Mandate and Defendants' threatened and/or actual enforcement of the Mandate.

## COUNT IV
## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

75. Plaintiffs repeat and incorporate by reference all preceding paragraphs.

76. The Mandate is contrary to provisions of the Affordable Care Act, which provides that "nothing in this title . . . shall be construed to require a qualified health plan to provide coverage of [abortion services] as part of its essential health benefits for any plan year." 42 U.S.C. § 18023(b)(1)(A) and (B).

77. The Mandate violates the Religious Freedom Restoration Act.

78. The Mandate violates the First Amendment to the United States Constitution.

79. In promulgating the Mandate, Defendants failed to consider the constitutional and statutory implications of the Mandate on for-profit employers like Plaintiff IAI.

80. The Mandate is arbitrary and capricious, not in accordance with existing law or required procedure, and is contrary to constitutional right, in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

81. Absent declaratory relief and a permanent injunction, Plaintiffs have been and will continue to be harmed by the Mandate and Defendants' threatened and/or actual enforcement of the Mandate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a. Declare that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates Plaintiffs' rights under the Religious Freedom Restoration Act;

b. Declare that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates Plaintiffs' rights under the First Amendment to the United States Constitution;

c. Declare that the Mandate and Defendants' enforcement of the Mandate against Plaintiffs violates the Administrative Procedure Act;

d. Issue a permanent injunction enjoining Defendants from enforcing the Mandate against Plaintiffs, particularly those portions of the Mandate pertaining to any requirement to cover contraceptive methods and sterilization procedures, as well as related education and counseling;

e. Award Plaintiffs their costs and attorneys' fees; and

f. Award such other and further relief as this Court deems equitable and just.

Respectfully submitted,

Mika Meyers Beckett & Jones PLC
Attorneys for Plaintiffs

Dated: January 10, 2013

By: _____
Douglas A. Donnell (P33187)
900 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 632-8000

{01324752 1}